IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

WAYNE ALVIN EVERHART                                                 PLAINTIFF

v.                                 Civil No. 4:17-cv-04113

SHARON FLOURNOY, Nurse, Sevier
County Jail; DEPUTY CHRIS
WALCOTT, Jail Administrator,
Sevier County Jail; and ROBERT
GENTRY, Sheriff Sevier County                                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is a Supplemental Motion for Summary Judgment filed by Defendant Sharon Flournoy (ECF No. 54) and a Supplemental Motion for Summary Judgment filed by Defendants Chris Walcott and Robert Gentry (ECF No. 58). Plaintiff Wayne Alvin Everhart has responded to each motion. (ECF Nos. 62, 64). Defendants Gentry and Walcott have filed a reply. (ECF No. 66). The Court finds these matters ripe for consideration.

### I. BACKGROUND

This is a civil rights action filed *pro se* by Plaintiff, Wayne Alvin Everhart, pursuant to 42 U.S.C. § 1983. Plaintiff's claims in this action arise from alleged incidents that occurred between August 20, 2017, and October 25, 2017, while he was incarcerated in the Sevier County Detention Center ("SCDC").[1] Plaintiff alleges Defendants denied him medical care while he was incarcerated in the SCDC between August 20, 2017, and October 25, 2017, when they ignored his complaints of extreme pain from his hernia and ulcers in his mouth and when his medications were "messed up" and improperly dispensed to him on three occasions. Plaintiff also claims his constitutional rights were violated when Defendant Walcott refused to provide him with copies of

---
[1] Plaintiff is no longer incarcerated.

his grievances. Viewed in the light most favorable to Plaintiff, the relevant facts are as follows.

**A. Plaintiff's Health Issues**

Plaintiff was booked into the SCDC on August 20, 2017. During intake, Plaintiff notified SCDC personnel about his inguinal hernia. (ECF No. 55, p. 1). On August 26, 2017, Plaintiff underwent a History and Physical, during which he identified his current medical conditions as anxiety, torn left meniscus, left shoulder pain, and a left inguinal hernia. *Id.*

On August 30, 2017, Plaintiff submitted a grievance stating in part that he "was denied medical attention when telling staff he was not only urinating blood but continuously leaking blood from his private parts! Yet staff not only refused medical attention but left [him in] N Pod with bloody clothing[.]" (ECF No. 60, pp. 2-3). Defendant Walcott responded the next day, indicating the grievance had been received and that "all medical complaints or request[s] should go to the Medical staff." *Id.* Plaintiff did not file a medical grievance or complaint regarding this incident and there is nothing in the summary judgment record to indicate that this grievance was ever addressed by any SCDC officer or any medical personnel. That same day, Plaintiff submitted another grievance, requesting "a printed copy of each and every grievance I've filed since being housed here." The next day, Defendant Walcott responded stating, "we do not give out grievances." *Id.*

On September 21, 2017, Plaintiff submitted an Inmate Medical Request complaining of blood in his urine. (ECF No. 60, p. 2). That same day, Officer Anthony Dibucci submitted the following Jail Incident Report:

> On the 21st day of September 2017, at 1700, I Officer DiBucci, assumed jailer duties. At approximately 1915 Officer Alvarez notified me over the radio that [Plaintiff] complained he has blood in his urine. I then called [Defendant Flournoy] and she asked us to get a sample of urine from [Plaintiff]. Once we did there was clearly blood in the urine. I then contacted [Defendant Flournoy] again [and] she told us to take [Plaintiff] to ER. [Defendant] Walcott was then contacted and

notified of the situation. I then had Officer Alvarez take [Plaintiff] to the ER.

(ECF No. 60-5, p. 2). Defendant Flournoy submitted an affidavit stating that although she was not on duty at the SCDC on September 21, 2017, she handled Plaintiff's complaints from off-site by having him transported to the emergency room. (ECF No. 56-1, p. 2). At the hospital, Plaintiff was diagnosed with an inguinal hernia and underwent a urinalysis culture. He was placed on Bactrim—an antibiotic used to treat urinary tract infections—for seven days and was referred to a surgical specialist to undergo further medical evaluation. (ECF No. 60, p. 3). The emergency room physician specifically ordered that "[Plaintiff] needs to see a surgeon next week". (ECF No. 60-4, p. 10). Defendant Flournoy states she had no further contact with the SCDC on September 21, 2017, following Plaintiff's emergency room visit. (ECF No. 56-1, p. 2).

On September 25, 2017, Plaintiff submitted an Inmate Grievance stating:

> I was taken to ER the other night and know for certain I was given a surgery referral, and have told staff numerous times about having pain in my lower hernia steadily dropping to point where it feels like its about to rupture, yet the nurse wants me to take a urine sample which was done the day of my trip to Emergency Room and hasn't happened but one time since then, it is the PAIN that is the problem! [Defendant Flournoy] is not a doctor nor do I feel comfortable having my well being or anything to [do] with my personal health in her hands or having her opinion what so ever.

(ECF No. 60-3, p. 11). Defendant Walcott responded, stating "[a]ll medical requests or complaints need to be made to the medical staff." *Id.* Later that day, Plaintiff submitted the following Inmate Medical Request:

> I was taken to emergency room a few nights ago and had blood in my urine, and know for a fact that I was given a referral to see a surgeon for this week, I have only urinated blood 1 time since the trip to the emergency room, yet the pain has increased and my hernia has dropped to point where it feels like its about to rupture, I have notified staff numerous times of this yet when calling [Defendant Flournoy] she has them tell me she will get my urine sample from me in morning, I do not see where a urine sample is even relevant to me being in pain and having no trace of blood or foul smell in my urine, she is not a DR. and I do not feel safe/comfortable

3

> with her having anything to do with her having any say so or influence to decision pertaining to my well being and/or personal health.

(ECF No. 44-5, p. 3).

According to her affidavit, Defendant Flournoy was not on duty at the SCDC from September 21, 2017, through September 24, 2017. (ECF No. 56-1, p. 2). She returned to work on Monday, September 25, 2017, and noted the physician's special orders for a surgical consult for Plaintiff. *Id.* In addition, Defendant Flournoy states that between September 25, 2017, and September 28, 2017, she made several attempts to locate a surgeon who was willing to see inmates. (ECF No. 56-1, p. 2). On September 28, 2017, she located Dr. Anthony Burton in Mena, Arkansas, who was willing to see Plaintiff. *Id.* On September 28, 2017, a week after the emergency room physician ordered that Plaintiff be referred to a surgeon for consult and three days after Plaintiff submitted two grievances regarding his referral to a surgeon, Defendant Flournoy sent a request to the Arkansas Department of Correction ("ADC") to order Plaintiff's surgical consult. *Id.*

On October 2, 2017, Plaintiff submitted another Inmate Medical Request stating, "I have tremendous pressure on my scrotum to point to where its making me dizzy and nauseous." (ECF No. 44-5, p. 4). In response to this request, Plaintiff was seen in the SCDC clinic that same day and medically evaluated by the staff of Southern Health Partners, Inc.[2] On October 3, 2017, a nurse replied to Plaintiff's Inmate Medical Request submitted on September 25, 2017, stating, in relevant part, "Medical needs are being met."[3] (ECF No. 44-5, p. 3). Plaintiff's medical records reflect that he was prescribed 500 mg of Tylenol that same day. (ECF No. 56-2, p. 7).

On October 10, 2017, Plaintiff submitted a grievance, requesting "[to] speak to Chad Daddle or [Defendant] Gentry[.]" (ECF No. 60-3, p. 19). However, Plaintiff did not specify what

---
[2] It is not clear from the record which staff member evaluated Plaintiff.
[3] It is not clear from the record whether the "nurse" who responded to Plaintiff's request was Defendant Flournoy.

he wanted to speak with them about. Defendant Walcott responded the following day, indicating that he would "let them know you would like to speak with them." *Id.* According to Defendant Gentry's affidavit,[4] as the Sheriff of Sevier County, Arkansas, he does not receive grievances and does not respond to grievances. (ECF No. 60-6, p. 1). He also states he was not aware that Plaintiff was suffering from severe pain during his incarceration in the SCDC and the only time he was aware of a medical emergency regarding Plaintiff was when he was taken to the emergency room on September 21, 2017. *Id.*

On October 12, 2017, Plaintiff submitted a Health Services Request stating:

This is the 3rd time my meds have been messed up either in morning shift and then tonight . . . the time before I was taken off ibuprofen due to being on [Bactrim] and neproxem at the same time then days later I was given 3 ibuprofens, 1 neproxen, and [Bactrim] and it has had the inside of my mouth sore and sensitive everyday since.

(ECF No. 56-2, p. 16). On October 13, 2017, Nurse Practitioner Steven Foltz examined Plaintiff, found there were multiple ulcers in Plaintiff's mouth, and noted that Peridex oral rinse needed to be ordered for Plaintiff. *Id.* at pp. 7, 13.

In her affidavit, Defendant Flournoy states that she was not on duty on October 13, 2017, and had no knowledge of the Peridex prescription. She states that she returned to work at the SCDC at 1:30 p.m. for a half day on Saturday, October 14, 2017, and left work at 5:30 p.m. Defendant Flournoy returned to the SCDC and worked on Sunday, October 15, 2017, from 9:00 a.m. until 1:00 p.m. Plaintiff complained of mouth pain at approximately 9:35 p.m. that evening and received an over-the-counter oral mouth rinse from a member of the SCDC's staff. *Id.* at p. 17.

---

[4] Defendant Gentry did not submit an affidavit in support of his first motion for summary judgment.

On Monday, October 16, 2017, Defendant Flournoy ordered Plaintiff's prescription for Peridex. (ECF No. 56-1, p. 3). That same day, Plaintiff submitted a medical request stating, "[I] got my medicated oral rinse last night but didn't get it today, my mouth is hurting [severely] to the point where I can barely eat and waking me up all throughout the night." (ECF No. 56-2, p. 18). A nurse responded on October 17, 2017, stating, "[w]ill receive on nights med pass." *Id.* That same day, Plaintiff submitted the following medical request:

> [I] have been telling staff and filling request about the inside of my mouth and throat for over a week now. I am unable to eat because of the [excruciating] pain and sores in my mouth! Which started because of over excess of certain and similar type meds being when not suppose to be on that much of one type. Everytime staff says nurse said it'll be on med cart yet when med cart gets here same thing nothing on it. I have food still in the bowls from being unable to eat it and [repeatedly] telling staff and asking for help yet nothing is being done, one staff member found some medicated rinse for me one night and haven't got it since . . . Each staff member after this says they can't get ahold of nurse and passes my issue off to the next shift[.]

*Id.* at p. 19. A nurse responded to Plaintiff's complaint the same day, stating:

> provider ordered your peridex mouth rinse on Friday. We have to order it from the pharmacy as it is something that we do not keep in our house stock. What you was given by jail staff was a standard over the counter mouth rinse. I have called the pharmacy and your mouth rinse is now ready for pick up, so you will receive it on tonight's med pass."[5]

*Id.* After October 17, 2017, Plaintiff continued to use the oral rinses twice daily until he was transferred to the ADC. *Id.* at p. 20.

On October 16, 2017, Plaintiff was evaluated by Dr. Anthony Burton for his surgical consultation regarding his hernia.[6] *Id.* at p. 13. Plaintiff was then scheduled to undergo hernia surgery on October 26, 2017. *Id.* On October 18, 2017, Plaintiff submitted an Inmate Grievance

---

[5] The identity of the nurse who responded to Plaintiff's complaints on October 17, 2017, is not known.
[6] According to the affidavit of Defendant Flournoy, Plaintiff was initially set up for a surgical consult to be conducted on October 2, 2017, at the Mena Surgical Clinic. She states that the appointment was later changed to October 16, 2017, because of a delay by the ADC in approving the consult. (ECF No. 56-1, p. 2).

6

stating:

> Have surgery on Thursday the 26th and I'm comfortable with having operation in Mena with Dr. Burton simply because of his experience in hernia repair and surgical background, yet my concern is in my aftercare treatment here in your facility, the fact that your staff has neglected my situation from day one and even went as far as leaving me in my cell after urinating blood and having pains all night and just passed the issue over to the next shift . . . staff claims they have no control over medical but yet they can't ever seem to get a hold of the nurse and are the ones looking after an inmate's well being in this facility, this suggestion is only to bring the matter to your attention and in case any of the above mentioned is also neglected in my aftercare, this surgery is a matter of importance and I hope your staff take my well being and recovery a little more serious than they have previously.

(ECF No. 60-3, p. 23). On October 20, 2017, Defendant Flournoy received notice from the ADC that Plaintiff was being "fast tracked" to the ADC and that the surgery scheduled for October 26, 2017, needed to be cancelled. (ECF No. 56-1, p. 4). On October 25, 2017, Plaintiff was released from the SCDC and transferred to the ADC.[7] *Id.*

### B. Applicable Policies

At all times relevant, Southern Health Partners, Inc. was under contract with the SCDC to provide healthcare services to inmates housed at the SCDC and Defendant Flournoy was an employee of Southern Health Partners, Inc. (ECF No. 34, p. 3).

In support of the Supplemental Motion for Summary Judgment, Defendant Walcott states in his affidavit that the SCDC provides inmates with a kiosk for the submission of grievances and medical requests. (ECF No. 60-1, p. 2). He says that inmates can "click on who should receive the grievance, myself or medical staff." *Id*. Defendant Walcott also states that nursing staff from Southern Health Partners, Inc. is at the SCDC six hours a day, seven days a week. He also states that "[Defendant] Flournoy was not the only medical personnel on staff and the Plaintiff could

---

[7] On February 26, 2018, while still in the custody of the ADC, Plaintiff underwent hernia surgery at the Little Rock Surgery Center.

7

have complained to any other medical personnel at any point during his incarceration." *Id*. at p. 3. Defendant Walcott also refers the Court to the "relevant policies and procedures of the [SCDC]" attached to his affidavit. However, the Court has been unable to locate the referenced policies and procedures.

The information regarding the SCDC's grievance and medical request policy submitted by Defendants Walcott and Gentry in support of their first motion for summary judgment stated that grievance and medical care requests are to be submitted in writing. (ECF No. 44-7, p. 5). The SCDC's staff is responsible for providing an inmate with a medical care request form and a pencil when an inmate states they need medical attention. The inmate may then give the request to any jailer, who is required to deliver the request to the SCDC's facility supervisor without undue delay. *Id*. In addition, this policy states that all perceived medical emergencies shall receive immediate attention.

Further, emergency medical situations are to take priority over routine SCDC operations. *Id.* at p. 3. This policy specifically lists "severe pain" as an emergency. *Id.* at p. 8. When an emergency arises, SCDC officers are to: "(A) immediately administer first aid; (B) relay the information to the De Queen Hospital Emergency room; (C) call the nearest law enforcement officer on duty for back-up; (D) call for an ambulance if transportation is needed; and (E) contact Jail Administrator/Supervisor." *Id.* It is the policy of the SCDC that emergency medical services are available 24 hours a day to ensure proper medical attention and, additionally, all officers are trained to respond to medical emergencies. *Id.* Following a medical emergency, it is the policy of the SCDC that detention facility staff strictly comply with the attending physician's aftercare orders. *Id.* at 4.

The policy of SCDC also provides that all matters of judgment regarding health services

for inmates are made within the sole province of the contract medical staff—i.e. the employees of Southern Health Care, Inc. (ECF No. 44-1, pp. 16-17). In addition, the policy provides that no employees of the SCDC are authorized to make non-emergency medical decisions on behalf of any inmate and no one in the sheriff's office, including the sheriff, makes any decision as to whether to provide medication, diagnostic testing, or medical treatment based on the cost of the medication, testing, or treatment. *Id.*

### C. Procedural History

Plaintiff filed his Complaint on December 7, 2017, in the Eastern District of Arkansas. (ECF No. 2). The case was transferred to the Western District of Arkansas, Texarkana Division, on December 11, 2017. (ECF No. 4). As previously stated, Plaintiff alleges Defendants denied him medical care while he was incarcerated in the SCDC between August 20, 2017, and October 25, 2017, when they ignored his complaints of extreme pain from his hernia and ulcers in his mouth and when his medications were "messed up" and improperly dispensed to him on three occasions. Plaintiff also claims his constitutional rights were violated when Defendant Walcott refused to provide him with copies of his grievances. Plaintiff sues Defendants in their official and individual capacities and seeks "compensation for pain and suffering, emotional distress and mental anguish." He also requests that "all Parties/Defendants be [publicly] stripped of their current position[.]" *Id.* at p. 6.

On December 20, 2018, the Court granted in part and denied in part previous summary judgment motions filed by Defendants. (ECF No. 47). The Court dismissed with prejudice all official capacity claims against Defendants Gentry, Walcott, and Flournoy. The Court dismissed with prejudice Plaintiff's individual capacity claim against Defendant Flournoy regarding the improper dispensing of Plaintiff's medications. However, the Court denied summary judgment on

9

Plaintiff's individual capacity claims against Defendants Flournoy, Walcott, and Gentry regarding denial of medical care based on Plaintiff's complaints of pain. The Court also denied summary judgment on Plaintiff's individual capacity claim against Defendant Walcott regarding failure to provide copies of grievances because the issue was not addressed in the motion for summary judgment. On February 7, 2019, Defendants filed a Joint Motion for Leave to File a Supplemental Motion for Summary Judgment. (ECF No. 51). On February 15, 2019, the Court granted Defendants' joint motion. (ECF No. 53).

Defendant Flournoy filed her Supplemental Motion for Summary Judgment on March 6, 2019, arguing she is entitled to summary judgment because she was not deliberately indifferent to Plaintiff's medical needs. (ECF No. 54). Defendant Flournoy has now provided the Court with an affidavit which states that she was not aware of the physician's orders for Plaintiff to see a surgeon until she returned to work more than a week after Plaintiff's visit to the emergency room and she was not aware of Plaintiff's painful ulcers in his mouth or the prescription that had been ordered for him until several days after he had notified the SCDC staff of his condition. (ECF No. 56, pp. 8-9).

On March 8, 2019, Defendants Gentry and Walcott filed their Supplemental Motion for Summary Judgment, making the same arguments they presented in their first motion and arguing that there is no constitutional right to the answering of grievances. (ECF No. 58). In addition, Defendant Gentry has submitted an affidavit stating he does not receive grievances, does not respond to grievances, and was not aware that Plaintiff was suffering from any pain during his incarceration in the SCDC. (ECF No. 60-6). Defendant Walcott has also submitted an affidavit stating he was not aware that Plaintiff was in any pain. (ECF No. 60-1).

Plaintiff has responded to the supplemental motions for summary judgment, including the

statements of fact filed by Defendants, and has submitted his own affidavit regarding his grievances, health requests, and the pain he suffered during his incarceration in the SCDC. (ECF Nos. 62, 63, 64, 65).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

### A. Grievances

Plaintiff alleges his constitutional rights were violated when Defendant Walcott refused to provide him with copies of the grievances he filed while he was incarcerated in the SCDC. "Inmates do not have a constitutionally protected right to a grievance procedure. Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the grievance procedure is not actionable under § 1983." *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (citing *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)). Therefore, a prison officials' failure to respond to an inmate's grievances or to return copies of those grievances to that inmate, without more, is not actionable under section 1983. *Evans v. Jones*, 2007 WL 2343843, at *1 (W.D. Ark. 2007). Accordingly, Defendant Walcott is entitled to summary judgment on this claim.

### B. Denial of Medical Care

Plaintiff alleges Defendants Gentry, Walcott, and Flournoy denied him medical care while he was incarcerated in the SCDC when they ignored his complaints of pain in connection with his hernia and mouth ulcers. (ECF No. 2, p. 5). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted). In addition, a supervisor may be held liable when he fails or refuses to intervene when a constitutional violation takes place in his presence. *Putnam v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981); *see also Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986).

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: '[Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). Here, Defendants do not dispute that Plaintiff's physical conditions—pain from a hernia and ulcers in his mouth—are serious medical conditions. The Eighth Circuit has stated that "delays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009)). Accordingly, the Court assumes for purposes of this opinion that Plaintiff suffers from serious medical conditions. The question before the Court now becomes whether Defendants' actions, or lack thereof, rose to the level of a constitutional violation.

To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions

does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). However, intentionally denying or delaying access to medical care may constitute deliberate indifference. *See Estelle*, 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239. Whether an official was deliberately indifferent to the inmate's serious medical need is a question of fact. *Schaub*, 638 F.3d at 914 (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).

The court will first address whether Defendant Flournoy is entitled to summary judgment on this claim and then determine whether Defendants Gentry and Walcott are entitled to summary judgment.

**1. Defendant Flournoy**

Plaintiff alleges Defendant Flournoy was deliberately indifferent to his medical needs when she ignored his complaints of severe pain from his hernia and ulcers.

The summary judgment record establishes that Plaintiff submitted multiple medical requests relating to blood in his urine and extreme pain from both his hernia and ulcers in his mouth. The record is also clear that on September 21, 2017, after evaluating Plaintiff, the physician at the emergency room ordered that he be referred to a surgeon for consult. The physician's specific orders stated, "[Plaintiff] needs to see a surgeon next week." Four days later, Plaintiff submitted two grievances complaining that he had not yet seen a surgeon. On September 28, 2017, Defendant Flournoy sent a request to the ADC for Plaintiff's surgical consult. In addition, after

14

Plaintiff was diagnosed with ulcers in his mouth, he was not provided his medication for four days while he suffered in pain.

Defendant Flournoy explains the delay in responding to the emergency room physician's orders and ordering Plaintiff's oral rinse prescription by pointing out that she was not on duty on the day Plaintiff was sent to the hospital or during the week thereafter. However, Defendant Flournoy admits that she was contacted on September 21, 2017—her day off—by someone at the SCDC about Plaintiff's condition and she approved or directed that Plaintiff be taken to the hospital. She goes on to state that she was not on duty the day Nurse Steven Foltz examined Plaintiff and ordered the mouth rinse. As previously stated, deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 105. Moreover, when an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow. *See, e.g.*, *Foulks v. Cole Cnty., Mo.*, 991 F.2d 454 (8th Cir. 1993) (liability where jail officials disregarded an instruction sheet from the plaintiff's doctor, ignored complaints of sickness and pain).

The summary judgment record is not clear as to who was on duty during the events in question. Likewise, the record is not clear as to if Defendant Flournoy, while off duty, was responsible for handling Plaintiff's medical requests and implementing instructions from the emergency room doctor after she sent Plaintiff to the hospital, or if she could have ordered the prescription for the ulcers in Plaintiff's mouth sooner than she did. Defendant Walcott states in his affidavit that the SCDC has nursing staff from Southern Health Partners, Inc. present six hours a day, seven days a week. He also states that Defendant Flournoy was not the only medical personnel on staff and Plaintiff could have complained to any other medical personnel at any point during his incarceration. If this is the case, the Court is confused as to why no medical personnel

15

reviewed the emergency room physician's orders the day Plaintiff returned from the hospital, why there was a delay in responding to several of Plaintiff's medical requests, and why Plaintiff's prescription oral rinse was not actually ordered on the day it was prescribed.

Accordingly, the Court finds there are genuine issues of disputed fact as to whether Defendant Flournoy was deliberately indifferent to Plaintiff's complaints of pain stemming from his hernia and the ulcers in his mouth. Therefore, Defendant Flournoy's motion for summary judgment on Plaintiff's claim of inadequate medical care arising from his complaints of pain should be denied.

### 2. Defendants Gentry and Walcott

Defendants Gentry and Walcott argue that they are entitled to summary judgment because they were not involved with the medical care provided to Plaintiff and consequently were not deliberately indifferent to Plaintiff's medical needs.

Both Defendants Gentry and Walcott held supervisory positions. At the time of the events in question, Defendant Gentry was the Sheriff of Sevier County and Defendant Walcott was the Jail Administrator at the SCDC. General responsibility for supervising a detention center is insufficient to establish personal involvement. *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). However, supervisors can incur liability for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to, or tacit authorization of, the violative practices. *See Langford*, 614 F.3d at 460. "Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) (citing *Estelle*, 429 U.S. at 103). It follows that where the duty to furnish treatment is unfulfilled, contracting for services with an independent contractor, such as Southern Health Partners, Inc. does not immunize county officials from liability

16

for damages in failing to provide a prisoner with the opportunity for such treatment. *See Langford*, 614 F.3d at 460.

### i. Defendant Gentry

The summary judgment record does not reflect that Defendant Gentry had any personal knowledge of the grievances or the health services requests filed by Plaintiff. Defendant Gentry has submitted an affidavit stating he does not receive or respond to grievances and he was not aware that Plaintiff was in pain during his incarceration in the SCDC. (ECF No. 60-6). He goes on to state that the only time he was aware of "a medical emergency regarding the Plaintiff" was when Plaintiff was taken to the emergency room on September 21, 2017. *Id.*

Although Plaintiff states in his affidavit that he "made numerous attempts through inmate complaints to Defendants Gentry and Walcott, [and they] were aware of the seriousness of my situation", the record contradicts this allegation as it relates to Defendant Gentry. (ECF No. 62-1). There is only one grievance submitted by Plaintiff that mentions Defendant Gentry. In this grievance, Plaintiff asks to speak with Defendant Gentry but does not mention the subject matter of his request. Defendant Walcott responded to this grievance indicating he would inform Defendant Gentry of his request. However, there is no evidence that Defendant Gentry was ever informed that Plaintiff was in pain by Defendant Walcott or anyone else.

Accordingly, upon review of the record, the Court finds that Defendant Gentry was unaware of Plaintiff's pain and was not involved in Plaintiff's medical care. Therefore, Defendant Gentry is entitled to summary judgment on Plaintiff's claim regarding denial of medical care.

### ii. Defendant Walcott

As for Defendant Walcott, the summary judgment record reflects that he read several of Plaintiff's grievances relating to the pain from his hernia and the ulcers in his mouth and responded

17

to Plaintiff, telling him that he needed to file a medical request because he was not medically trained. This occurred even after Plaintiff had been taken to the hospital on one occasion for blood in his urine and pain from the hernia. This conduct appears to directly conflict with the SCDC's medical policy requiring jailers to submit all inmate medical reports to the medical provider. In addition, Plaintiff's severe pain is a symptom that constitutes an emergency under the SCDC's policy. Still, Defendant Walcott did not report Plaintiff's complaints of pain to the medical provider nor did he provide Plaintiff with any medical attention even though he was trained to handle perceived medical emergencies.

As previously stated, the Eighth Circuit has held that "delays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim." *See Langford*, 614 F.3d at 460 (citing *Rodriguez*, 577 F.3d at 829). Construing the facts in the light most favorable to Plaintiff, the Court finds that there are genuine disputes of material fact as to whether Defendant Walcott was personally involved in Plaintiff's medical care and whether he was deliberately indifferent to Plaintiff's medical needs.

### C. Qualified Immunity

The Court will now address whether Defendant Walcott is entitled to qualified immunity.[8] Determining whether a defendant is entitled to qualified immunity requires a two-step inquiry. *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). First, the Court must determine whether the facts demonstrate a deprivation of a constitutional right. *Id.* (citing *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)). If so, the Court must decide whether the implicated right was clearly established at the time of the deprivation. *Id.* To determine if Plaintiff's right was clearly established at the time of the alleged deprivation, the Court "must . . . examine the information

---

[8] It is not necessary to address the issue of qualified immunity with respect to Defendant Gentry as he was not personally involved in Plaintiff's medical care and therefore was not deliberately indifferent to his needs.

18

possessed by the governmental official accused of wrongdoing in order to determine whether, given the facts known to the official at the time, a reasonable government official would have known that his actions violated the law." *Langford*, 614 F.3d at 461. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, the Court must ask whether the law at the time of the events in question gave the officers "fair warning" that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Here, the facts when viewed in a light most favorable to Plaintiff demonstrate that there is a question of fact regarding whether Defendant Walcott violated Plaintiff's constitutional rights by ignoring his complaints of severe pain. Accordingly, the first prong of the qualified immunity analysis is satisfied. As to the second prong, there is no question that in August 2017, the law clearly established that a reasonable officer would know that it is unlawful to delay medical treatment for an inmate with obvious signs of medical distress, especially when the inmate communicates this distress directly to the officer. *See Dadd v. Anoka Cnty.*, 827 F.3d 749, 753, 757 (8th Cir. 2016) (denying motion to dismiss based on qualified immunity, finding that jail staff acted with deliberate indifference to inmates complaints of pain); *Gordon v. Frank*, 454 F.3d 858, 863 (8th Cir. 2006) (denying qualified immunity to officers when inmate informed officers of his serious health issues, the officers ignored inmates' shortness of breath and chest pain, and officers were responsible for responding to medical emergencies). Accordingly, Defendant Walcott is not entitled to qualified immunity regarding Plaintiff's claim that he denied him adequate medical care.

## IV. CONCLUSION

For the reasons stated above, Defendant Flournoy's Supplemental Motion for Summary Judgment (ECF No. 54) is **DENIED.** Plaintiff's individual capacity claim against Defendant Flournoy regarding denial of medical care based on Plaintiff's complaints of pain remains for resolution.

Further, Defendants Gentry and Walcott's Motion for Summary Judgment (ECF No. 58) is **GRANTED IN PART** and **DENIED IN PART**.

(1) The motion is **GRANTED** as to the individual capacity claim against Defendant Walcott regarding the failure to provide copies of grievances and Plaintiff's individual capacity claim against Defendant Gentry for denial of medical care. These claims are **DISMISSED WITH PREJUDICE**.

(2) The motion is **DENIED** as to the individual capacity claim against Defendant Walcott regarding denial of medical care and the Court, further, finds that Defendant Walcott is not entitled to qualified immunity in regard to this claim. Accordingly, this claim shall remain for resolution.

**IT IS SO ORDERED**, this 17th day of June, 2019.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge